IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, | |
| Plaintiff, | 8:20CV89 |
| v. | MEMORANDUM AND ORDER |
| ARCH INSURANCE COMPANY, | |
| Defendant. | |

This matter is before the Court on Arch Insurance Company's ("Arch") Motion to Compel Arbitration and Motion to Dismiss, or in the Alternative, Stay Plaintiff's Declaratory Judgment Action (Filing No. 21) and Union Pacific Railroad Company's ("Union Pacific") Motion for a Preliminary Injunction (Filing No. 4). For the reasons stated below, the Court grants Arch's motions to compel arbitration and stay and denies Union Pacific's motion for a preliminary injunction.

**I.      BACKGROUND**

This case arises out of an industry track agreement ("ITA") between Union Pacific and U.S. Silica Company ("Silica") and a separate lawsuit relating to that agreement. Union Pacific owns railways and operates rail transportation throughout the western United States, and Silica is a national industrial minerals logistics corporation. The ITA governs the contractual relationship between Union Pacific and Silica regarding Silica's facility in Pacific, Missouri (the "facility"). More specifically, the ITA governs the rights and obligations between Union Pacific and Silica with respect to liability, indemnification, insurance, and dispute resolution.

Under the ITA, Silica was required to obtain insurance and add Union Pacific as an additional insured on the policy. Silica obtained two insurance policies, one through Arch and another with National Union Fire Insurance Company ("National Union").

On April 14, 2014, a Union Pacific employee, Kevin King ("King"), was working at the facility and was injured. King brought a negligence suit (the "King lawsuit") against Union Pacific and Silica. On October 13, 2015, Silica, Union Pacific, Arch, and National Union executed a global settlement agreement with King ("King settlement"); Arch and National Union paid the freight, but the King settlement left open the possibility for Arch and National Union to seek contribution from Union Pacific.

On January 18, 2018, Silica ostensibly assigned its right to indemnification[1] under the ITA to Arch. Silica executed the assignment so Arch could seek indemnification from Union Pacific in relation to the King settlement. However, the ITA contains an anti-assignment provision that, on its face, requires Union Pacific's consent prior to any assignment. Silica did not obtain Union Pacific's consent prior to the assignment to Arch. Relying in part on the assignment from Silica, Arch demanded arbitration with Union Pacific under the terms of the ITA to determine any claims it may have for indemnification.

In response to the demand for arbitration, Union Pacific filed a declaratory judgment action (Filing No. 1) and subsequent motion for a preliminary injunction in this Court. Union Pacific seeks a determination that Silica's assignment to Arch was invalid and that it is not required to arbitrate with Arch. In addition to filing suit, Union Pacific issued a demand for arbitration under the ITA *with Silica* on the very same question here: whether the assignment from Silica to Arch is valid. In response, Arch moved to compel arbitration and to either dismiss or stay this case pending arbitration.

## II.   DISCUSSION

Union Pacific's motion for preliminary injunction and Arch's motion to compel arbitration are intertwined. In summary, Union Pacific urges the Court to find this is simply

---

[1] In pertinent part, the ITA contains parallel indemnification provisions, stating "[Union Pacific] shall indemnify [Silica] from and against any and all claims for Loss arising out of the negligent acts or omissions of [Union Pacific]" and "[Silica] shall indemnify [Union Pacific] from and against any and all claims for Loss arising from or growing out of the negligent acts or omissions of [Silica]." (Filing No. 22-1).

2

an issue of formation. That is, Arch does not have a contract to arbitrate with Union Pacific, and so Arch cannot compel Union Pacific to arbitrate. Under the ITA, there is clearly a valid agreement to arbitrate between Union Pacific and Silica, but whether Arch can enforce that agreement depends on the validity of the assignment. Union Pacific claims it is not valid because the ITA contains an anti-assignment provision. Arch contends the Court should not reach the merits of the assignment, as the ITA delegates these issues to the arbitrator. Arch argues the arbitration provision plainly and broadly delegates all disputes "relating to the validity, enforceability, construction, interpretation, and performance" of the ITA to the arbitrators, and thus it avers the questions at issue "fall squarely within the plain text of the arbitration clause" and should be decided by the arbitrator.

The issues and parties' arguments are circular. To determine if an agreement to arbitrate exists, the Court would have to first decide issues the ITA purportedly delegates to the arbitrator. To further complicate matters, the validity of Silica's assignment to Arch—the heart of the issue in this case—is currently pending in a separate arbitration dispute brought by Union Pacific against Silica, under the very agreement at issue here.

### A.    Motion to Compel Arbitration
#### i.    Standard of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to agreements to arbitrate those disputes that arise from a contract involving interstate commerce. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). The parties do not dispute the FAA applies here.

The FAA provides "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a liberal federal policy favoring arbitration agreements,

3

notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Under 9 U.S.C. § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." In deciding a motion to compel arbitration where the parties rely on matters outside the pleadings, the Court applies a standard akin to summary judgment. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) ("The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure."). Therefore, the Court will "view[] the evidence in the light most favorable to the nonmoving party" and grant the motion if "'there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *DeLuna v. Mower Cty.*, 936 F.3d 711, 716 (8th Cir. 2019) (quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).

### ii. Issues of Arbitrability

Arch and Union Pacific agree the first topic the Court should resolve is "arbitrability" of the dispute, but they disagree as to what that means and the Court's role in deciding "issues of arbitrability." When a district court is asked to compel arbitration, it is generally "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute." *Pro Tech Indus. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). Union Pacific argues the inquiry ends at step one: it does not have a valid agreement to arbitrate with Arch, and so the Court should not compel arbitration.

Arch argues that although these threshold questions are "presumptively committed to judicial determination," *Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008),

the "parties may eliminate that presumption by providing clear and unmistakable language to the contrary." *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 740 (8th Cir. 2014); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (finding such questions are typically resolved by the courts unless the parties "clearly and unmistakably" intended to submit that issue to an arbitrator). Arch argues the ITA does "clearly and unmistakably" commit these threshold questions—whether there is a valid agreement to arbitrate and the scope thereof—to the arbitrator. *AT&T*, 475 U.S. at 649.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 911 (8th Cir. 2010). Both parties agree Missouri law applies. Under Missouri law, "the question 'who has the primary power to decide arbitrability' turns on what the parties agreed about that matter." *Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 603 (Mo. Ct. App. 2015).

According to Arch, "an arbitration agreement need not recite verbatim that the 'parties agree to arbitrate arbitrability" to find clear and unmistakable intent that they intended to do so. *Id.* at 604 (quoting *Houston Refining, L.P. v. United Steel, Paper and Forestry, Rubber, Mfg.*, 765 F.3d 396, 410 n.28 (5th Cir. 2014)). Arch argues under Missouri law, an arbitration agreement "clearly and unmistakably" commits the issue of arbitrability to an arbitrator if the delegation provision "gives an arbitrator the authority to resolve disputes relating to the 'enforceability,' 'validity,' or 'applicability' of an arbitration agreement." *Id.* (quoting *W.L. Doggett LLC v. Paychex, Inc.*, 92 F.Supp.3d 593, 597 (S.D. Tex. 2015) (collecting cases)); *Caldwell v. UniFirst Corp.*, 583 S.W.3d 84, 90 (Mo. Ct. App. 2019); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (examining a delegation provision stating the arbitrator has "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement" and finding it clearly and unmistakably delegated arbitrability to the arbitrator).

5

The delegation provision at issue here provides, "[a]ny dispute arising under or related to this Agreement shall be resolved as set out in this Article, including, without limitation, each, all, and any disputes about or relating to the validity, enforceability, construction, interpretation and performance of this Agreement."  Based upon this language and Missouri law, Arch claims "the narrow question before this Court is whether the specific question presented by this case—the validity, enforceability, construction, and interpretation of the ITA's anti-assignment provision vis-à-vis the assignment to Arch—was delegated to the arbitrator." *See Dotson*, 472 S.W.3d at 603.

Union Pacific disagrees with Arch's line of reasoning and contends the Court need only decide whether a valid agreement exists between the parties because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T*, 475 U.S. at 648.  As Union Pacific sees it, Arch puts the cart before the horse and maintains a dispute relating to the interpretation of provisions within the ITA presupposes the formation of a contract.  It states "Arch conducts the analysis as if it were Silica, but the only way for it to assume Silica's rights is if the Assignment is valid, which it is not."

Union Pacific thus argues the Court—not the arbitrator—should analyze the validity of the assignment, find it is not valid under the terms of the ITA, and ultimately decide no agreement exists between it and Arch.  In support, Union Pacific relies primarily on *I.S. Joseph Co. v. Mich. Sugar Co.*, 803 F.2d 396 (8th Cir. 1986) and *Koch*, 543 F.3d 460.  In *I.S. Joseph*, a purported assignee sought to compel arbitration with a signatory to a contract, and the signatory refused to arbitrate based on the lack of an agreement to do so.  803 F.2d at 398-99.  The circuit court held "the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other." *Id.* at 400.  Similarly, in *Koch*, the circuit court looked to *I.S. Joseph* and again found "the validity of an assignment is a matter for the court." *Koch*, 543 F.3d at 465.

6

Arch counters *I.S. Joseph* and *Koch* are not persuasive under the circumstances present in this case. First, Arch argues *I.S. Joseph* is not binding here because it "predated the Supreme Court's case law on delegations of questions of arbitrability, and it is therefore no surprise that no such analysis was conducted." *See AT&T*, 475 U.S. at 649; *First Options*, 514 U.S. at 944; *Rent-A-Center*, 561 U.S. at 71. While Arch notes *Koch* was decided after the relevant Supreme Court case law on the subject, it states it is "of little assistance in resolving the questions before the Court" because the arbitration provision in *Koch* did not contain language referring disputes concerning the validity, interpretation, construction, or enforceability to the arbitrator.[2]

Although *I.S. Joseph* and *Koch* indicate it is the Court's role to determine whether an assignee can enforce an existing agreement to arbitrate, neither specifically address the precise situation here. More specifically, whether a Court should still make that determination when the arbitration provision, like the one at issue in the ITA, seemingly delegates the issue to the arbitrator. Albeit not a perfect match, the Court finds *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC* instructive. 756 F.3d 1098, 1100 (8th Cir. 2014).

In *Eckert/Wordell*, Fischer Laser Eye Center ("Fischer") entered a contract with Eckert Wordell Architects, Inc. ("Eckert Wordell") to develop property into an eye care clinic (the "property"). *Id.* at 1099. The contract included an arbitration provision stating the parties would submit "[a]ny claim, dispute, or other matter in question arising out of or related to [the contract]" to arbitration and incorporated the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA Rules") therein.[3] *Id.*

---

[2]The circuit court in *Koch* quotes a portion of the arbitration provision at issue, stating it covers "any claim, dispute, or controversy arising from or related to either this Agreement or the relationships that result from this Agreement." *Koch*, 543 F.3d at 466.

[3]In *Eckert/Wordell*, the court found the parties clearly and unmistakably delegated threshold questions of arbitrability to the arbitrator because the arbitration agreement

Fischer then formed a separate corporation, Family Eye Properties, LLC ("FEP"), and Fischer transferred the property to FEP. *Id.* Sometime thereafter, FEP changed its name to FJM Properties of Willmar, LLC ("FMJ Properties"). *Id.*

Due to an issue with the property, FMJ Properties demanded to arbitrate according to the terms of the original contract between Fischer and Eckert Wordell. *Id.* Eckert Wordell refused to participate in arbitration and filed a declaratory judgment action in federal court, asserting "FMJ Properties was not a signatory" to the contract and "it had no agreement with FJM Properties requiring it to arbitrate disputes." *Id*. The district court granted summary judgment in favor of FMJ Properties, finding "the contract had committed to the arbitrator the issue of whether FMJ Properties, as a non-signatory, could use the arbitration provision to compel signatory Eckert Wordell to arbitrate." *Id.* 1099-1100. The Eighth Circuit affirmed, stating "whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability." *Id.* at 1100. And the contract at issue, singed by Eckert Wordell, committed that issue to the arbitrator. *Id.*

*Eckert/Wordell* does not specifically address an assignment of a cause of action, but its principles persuade the Court to find that an arbitrator is better suited to resolve the issues here. *See also Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 209 (finding "a non-signatory can compel a signatory to arbitrate under an agreement where the question of arbitrability is itself subject to arbitration."). Unlike *I.S. Joseph* and *Koch*—or at least not discussed therein—the language of the arbitration provision in the ITA commits the question of arbitrability to the arbitrator under Missouri law. *See Dotson*, 472 S.W.3d at 603. *Eckert/Wordell* instructs that in such a situation, the arbitrator is best positioned to decide whether a non-signatory can compel arbitration with a signatory to the

---

incorporated the AAA Rules. *Id.* at 1100. Here, the ITA does not incorporate the AAA Rules, but this distinction is less important in light of Missouri state law on the matter. *See Dotson*, 472 S.W.3d at 603.

arbitration agreement. Given the "liberal federal policy favoring arbitration," *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 874 (8th Cir. 2018), the circular arguments at issue here, and Union Pacific's existing demand to arbitrate with Silica on the same issues, the Court will grant Arch's motion to compel arbitration.

### B. Motion to Stay Proceedings

Arch argues the Court should dismiss Union Pacific's declaratory judgment action for failure to state a claim, or in the alternative, stay proceedings pending the outcome of arbitration. "The FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011); 9 U.S.C. § 3 (noting a court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."). Therefore, the Court will deny Arch's motion to dismiss and grant the motion to stay proceedings pending arbitration.

### C. Motion for Preliminary Injunction

Although the Court's grant of Arch's motion to compel largely addresses the issues raised in Union Pacific's motion for preliminary injunction, the Court will touch on the arguments briefly. Union Pacific seeks a preliminary injunction "staying any arbitration proceedings until thirty days after such time as the Court has determined the threshold issue of arbitrability presented in [its] declaratory judgment action."

"[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 114 (8th Cir. 1981). Although no single factor is dispositive, "the likelihood of success on the merits is 'the most important of the Dataphase factors.'" *Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020) (quoting *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998)). The burden rests with the moving party.

*Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) ("A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant.").

Union Pacific contends all four of the Dataphase factors weigh in its favor, but the Court is not convinced. As discussed above, Union Pacific argues it is likely to succeed on the merits of the claim because Arch is not a signatory and it cannot enforce the arbitration provision. Because the Court already determined arbitration is the proper route, it will not again discuss the merits of the argument. Union Pacific also states it would suffer irreparable harm if it were forced to arbitrate with Arch. Under these circumstances, it is difficult to see what harm Union Pacific might suffer, as it has already demanded to arbitrate this very issue with Silica. Resolving the validity of the assignment in the same forum will prevent inconsistent decisions and serve the public interest. *See Dataphase*, 640 F.2d at 114 (noting a Court should also consider the public interest in deciding a preliminary injunction motion). Accordingly, Union Pacific's motion for a preliminary injunction is denied.

Based on the foregoing,

IT IS ORDERED:

1. Plaintiff Arch Insurance Company's Motion to Compel Arbitration (Filing No. 21) is granted.
2. Arch's Motion to Stay Plaintiff's Declaratory Judgment Action is granted. The motion is denied in all other respects.
3. Defendant Union Pacific Railroad Company's Motion for Preliminary Injunction (Filing No. 4) is denied.

Dated this 23rd day of January 2021.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge